UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAYRIE BOYCE,

    Plaintiff,

v.                                        Case No. 1:12-cv-967
                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on July 24, 1956 and has a bachelor's degree (AR 71, 535).[1] She alleged a disability onset date of September 14, 2005 (AR 71). Plaintiff had previous employment in the banking industry (mutual fund coordinator, cash fund coordinator, commercial loan processor and customer service representative) and as a kiosk manager for ticket sales (AR 115). Plaintiff identified her disabling condition as asthma (AR 104). On September 2, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits ("*Boyce I*") (AR 15-25). Plaintiff appealed the adverse decision to this Court. *See Boyce v. Commissioner of Social Security*, No. 1:09-cv-271 (W.D. Mich.). The appeal resulted in an order reversing and

---

[1] Citations to the administrative record will be referenced as (AR "page #").

remanding the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g), which provided in pertinent part as follows:

> In his report and recommendation, the Magistrate Judge recommended that the Administrative Law Judge's (ALJ) decision denying Plaintiff's claim for benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to allow the ALJ to explain why he rejected several opinion letters written by Dr. Marcus, Plaintiff's treating physician, regarding the disabling nature of Plaintiff's medical conditions. After conducting a *de novo* review of the report and recommendation, the Court concludes that it should be adopted as the Opinion of this Court.
>
> \*   \*   \*
>
> Here, the ALJ violated § 1527(d)(2) by failing to give good reasons for his rejection of Dr. Marcus' opinion letters. The ALJ stated that Dr. Marcus' July 2006 and August 2007 letters "appear rather exaggerated but, yet . . . still essentially indicate that the claimant is not precluded by her asthma from performing all work activity." (A.R. Tr. at 23). As the Magistrate Judge noted, "[d]espite the fact that the administrative transcript includes over 160 pages of medical records relating to plaintiff's medical history of asthma (AR 19), the ALJ gave no reason for rejecting Dr. Marcus' opinion" other than that Dr. Marcus' letters appear "rather exaggerated." (Report and Recommendation, docket no. 14, at 9). The ALJ's analysis is insufficient to permit a meaningful review of his application of the treating physician rule. Thus, the Court will reverse and remand the ALJ's decision. *See* [*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546 (6th Cir. 2004)] (stating that "[a] court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

*Boyce*, No. 1:09-cv-271 (Order Adopting Report and Recommendation) (July 2, 2010) (docket no. 16).[2] The Appeals Council remanded the case for a new hearing "consistent with the order of the court." (AR 594).

The hearing on remand was held on April 22, 2011 (AR 755-804). The ALJ reviewed plaintiff's claim *de novo* and entered a "Remand Decision" denying benefits on May 23, 2011

---

[2] The undersigned notes that he was the Magistrate Judge who issued the Report recommending remand of this matter.

("*Boyce II*") (AR 583-91). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 14, 2005 and that she met the insured status requirements under the Social Security Act through December 31, 2010 (AR 585). At step two, the ALJ found that plaintiff suffered from severe impairments of "asthma with allergies, obesity, major depressive disorder, and panic disorder" (AR 585). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 586).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except avoid concentrated exposure to respiratory irritants (dust, fumes, gases, odors, chemicals, humidity, temperature extremes, etc.) and cannot maintain the concentration necessary to execute more than simple (one or two step) job tasks.

(AR 587). The ALJ also found that plaintiff was unable to perform her past relevant work (AR 589-90).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of light, unskilled jobs in the national economy (AR 590). Specifically, the vocational expert (VE) testified that plaintiff could perform the requirements of representative occupations in Michigan such as: hand packager (1,300 jobs); assembler (2,000 jobs); and machine operator (500 jobs) (AR

5

590, 795-99).[3] Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act from September 14, 2005 (the alleged disability onset date) through May 23, 2011 (the date of the decision) (AR 591).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**The Social Security Administration failed for a second time to give proper weight to the treating doctor's opinions that Ms. Boyce needs to avoid nearly all exposure to asthma triggers, instead limiting her to avoiding merely "concentrated" exposure to her asthma triggers.**

The Court previously addressed Dr. Marcus' opinions as follows:

Dr. Marcus provided three opinions. In a letter dated September 29, 2005, the doctor stated in pertinent part as follows:

> Mayrie Boyce is under my medical care. She has a history of environmentally induced asthma, which causes severe asthmatic attacks sometimes requiring emergency room visits. Her asthma is triggered by exposure to perfume and flower scents and typically are at their worst when she is working in an enclosed area where these scents are present.
>
> Because of these environmental triggers for her asthma, her job requirements limit her to exposure to these stimuli for her asthma.

(AR 466).

In a letter dated July 5, 2006, Dr. Marcus expressed the opinion that plaintiff's asthma caused more work restrictions:

> This is a letter of medical limitation for Mayrie Boyce who has been a longstanding patient of mine. Mayrie has severe atopic related asthma with multiple environmental triggers. These

---

[3] The Court notes that the number of jobs which plaintiff could perform in the regional economy as determined by the ALJ at step five of the sequential evaluation dropped drastically on remand. In *Boyce I*, the ALJ found that plaintiff could perform 33,000 jobs in the regional economy, while in *Boyce II* that number was reduced to 3,800 jobs (AR 24-25, 590, 795-99).

> environmental triggers have lead to her inability to work in several situations, which include exposure to dust, perfume, flowers, solvents such as Windex or Pledge, chemicals such as paint or varnish fumes, smoke, moldy paper, or high humidity conditions.
>
> These environmental exposures resulted in her being unable to continue her job at a local bank, as her employers were unable and/or unwilling to keep these environmental agents out of the work place.
>
> It is therefore my medical opinion that unless employment with fairly strict environmental exposure restrictions becomes available that this patient is completely disabled at this time.

(AR 465).

> Dr. Marcus updated his opinion in a letter dated August 12, 2007:
>
> This is a letter of medical disability for Mayrie Boyce. This is an update to a letter that was provided on July 6, 2006. Mayrie is diagnosed with severe atopic asthma. She has multiple environmental triggers, which include exposure to dust, perfume, flowers, solvents, smoke, moldy paper, high humidity, and other fumes that are commonly present in many work environments. This has caused her medical disability in that most work environments cause her exposure to these substances and have, in the past, caused multiple severe asthmatic attacks.
>
> As a result of this Mayrie is unable to work in almost any work environment outside of her home. She is therefore training for occupational work that she can do from her home. This training is not yet complete and because of that Mayrie is remaining on medical disability until such time as she has successfully completed her occupational training to begin a home-based occupation.

(AR 464).

*Boyce*, No. 1:09-cv-271 (Report and Recommendation at pp. 5-6) (May 28, 2010) (docket no. 14).

Now, on appeal of *Boyce II*, plaintiff contends that "[t]his time the Decision contains an explanation; but the reasoning behind the explanation is not supported by the evidence and is not a valid basis for denying benefits." Plaintiff's Brief at p. 15.

7

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). On the other hand, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human*

*Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

After the court-ordered remand, Byra M. Reddy, M.D., of the Asthma Allergy Center of South West Michigan, evaluated plaintiff and tested her for a variety of allergens (AR 740-42). Dr. Reddy noted that plaintiff had an allergy evaluation in the 1990's and received allergy immunotherapy at that time (AR 740). Plaintiff also reported that she was managing on medication, and that she was very sensitive to multiple medications, adhesives and foods (AR 740). The doctor recounted that "[s]he has a big list of things that she does not tolerate, which include iodine, radiocontrast dye, sulfa, penicillin, erythromyacin, codeine, Tylenol, latex, adhesives, seafood, coffee, squash, walnuts, aged cheese, melons, eggs, sugar, solvents, chemicals" (AR 740). Plaintiff also advised the doctor that her asthma was aggravated by humidity, viral infections, cold air, exercise and gasoline fumes (AR 740). After performing skin tests for several food allergens and environmental inhalants, plaintiff was found positive to histamine and was 2+ reactive to a mold mix (AR 741). However, plaintiff "did not react to any other tested food allergens or other environmental inhalants" (AR 741). The doctor's plan included:

> Advised [plaintiff] to continue elimination diet based on clinical experience since skin test has not shown any significant positive reactions to food. Environmental control measures for mold discussed. I did not recommend specific

9

> allergen immunotherapy at this point since she reacted mildly to mold and no other significant positive environmental inhalant allergies.

(AR 741).

In *Boyce II*, the ALJ re-evaluated Dr. Marcus' opinions in light of the testing performed by Dr. Reddy:

> In March 2011, claimant was tested at the Asthma Allergy Center of South West Michigan. Spirometry FEV1/FVC ratio was 87, which was 104% predicted normal. Examination of lungs demonstrated good air entry. No rhonchi or wheezing. No masses or thryoid swelling of neck. No skin rash. She was tested for several food allergens and environmental inhalants. She was positive to histamine and negative to saline control. She was 2+ reactive to mold mix by intradermal method and did not react to any other tested food allergens or other environmental inhalants. At this point, claimant was diagnosed with moderate persistent asthma, history of food intolerance, and perennial allergic rhinitis. She is on good medication regimen and advised to continue. Dr. Reddy indicated that claimant should follow up in six months or sooner, if needed (Ex 27F).
>
> In addressing and resolving the remand issue, the issue was the September 2, 2008 hearing decision lacked explanation for reason of rejecting Dr. Markus [sic]. a treating source, opinion (Ex A/6). The doctor opined she really must not work outside the home. This is an overly restrictive residual functional capacity because even if she keeps her home free of allergens, there is no reason to think another location cannot also be made clean to accommodate her true allergies (Ex 27F). Claimant said that she went to school to obtain a certificate to gain employment. She sought employment and was turned down due to her allergies but evidence shows her allergies really only consist of mold and histamines (Ex 27F). It appears Dr. Markus' restrictions were focused on claimant's location rather than the allergens she should avoid. Thus, Dr. Markus' restrictions are not consistent with the test results performed by Dr. Reddy. Since Dr. Reddy is Board Certified in Allergy and Clinical Immunology, the test results are given significant weight over the opinions of the Internist, Dr. Markus. Regarding the weight given to Dr. Markus' opinion, the undersigned concedes, that although it was not specifically stated, this opinion was given little weight in the September 2, 2008 decision; however, this opinion given [sic] no weight at this time.

*   *   *

> Overall, the undersigned finds that the little weight given to the opinion of Dr. Marcus was in error. Based on the test results in Exhibit 27F, the homebound restrictions by Dr. Marcus should be given no weight. Additionally, there is no indication from the progress notes in Exhibit 28F that claimant's mental impairments have increased and therefore do not warrant a more restrictive residual functional capacity as well. Accordingly, the residual functional capacity established in the September 2, 2008 hearing decision remains unchanged.

(AR 588-89).

The ALJ gave good reasons for assigning no weight to Dr. Marcus' opinions as required under *Wilson* and the regulations. When the agency does not give a treating source's opinion controlling weight, it applies the following factors: length and treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors (e.g., "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has" and "the extent to which an acceptable medical source is familiar with the other information in your case record"). 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ properly deferred to the opinions expressed by Dr. Reddy, a physician Board Certified in Allergy and Clinical Immunology, who treated plaintiff as a specialist in the area of her alleged disabling condition (i.e., asthma with allergies). *See* 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Accordingly, plaintiff's claim of error will be denied.

**IV. CONCLUSION**

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 24, 2014                                   /s/ Hugh W. Brenneman, Jr.
                                                                               HUGH W. BRENNEMAN, JR.
                                                                               United States Magistrate Judge